UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| In Re:<br><br>MARILYNN THOMASON,<br><br>Debtor. | Bankruptcy Case<br>Nos. 21-40435-JMM<br>and 22-40460-JMM |
|---|---|

### MEMORANDUM OF DECISION

Appearances:

    Marilynn Thomason, Debtor, pro se.

    Kathleen A. McCallister, Meridian, Idaho, chapter 13 trustee.

    Lewis N. Stoddard, HALLIDAY, WATKINS & MANN, P.C., Boise, Idaho, Attorney for LSF10 Master Participation Trust.

    Janine P. Reynard, JOHNSON MAY, Boise, Idaho, Attorney for WaFd Bank.

### *Introduction*

Before the Court is a motion filed by debtor Marilynn Thomason ("Debtor") to extend time to complete the credit counseling requirement. Doc. No. 6. Also at issue is the chapter 13[1] trustee, Kathleen A. McCallister's ("Trustee") motion to dismiss Debtor's case with a bar to refiling. Doc. No. 16. Creditor LSF10 Master Participation Trust

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM OF DECISION–1

("Trust") joined in Trustee's motion. Doc. No. 26. Finally, the Court will consider Debtor's motion for extension of stay.

The Court heard oral argument on the various motions on November 22, 2022, and November 28, 2022. Doc. Nos. 34 & 35. Following the latter hearing, the Court took the motions under advisement with the exception of Debtor's motion to extend the stay, which it orally denied as to Trust, but took under advisement as to all other creditors. Doc. No. 35. On November 29, 2022, the Court entered an order denying Debtor's motion to extend the automatic stay as to Trust. Doc. No. 36. This order was also entered in Debtor's first bankruptcy case, *In re Thomason*, 21-40435-JMM at Doc. No. 258.

After considering the motions, oral arguments, as well as the applicable law, this decision resolves the matters at issue. Rules 7052; 9014.

## *Facts and Procedural Posture*

On July 16, 2021, Debtor filed her first chapter 13 bankruptcy petition. *In re Thomason*, 21-40435-JMM at Doc. No. 1 ("First Bankruptcy Case"). On September 8, 2021, Trust moved for relief from the automatic stay which was granted in part on November 17, 2021.[2] First Bankruptcy Case at Doc. Nos. 41 & 103–04. Debtor moved for reconsideration of that decision, which was denied. *Id.* at Doc. Nos. 107 & 122. She

---

[2] Trust's motion for stay relief sought an order "Terminating and annulling the automatic stay as it applies to the enforcement by Movant of its rights in the property located at 7276 West 3200 South, Rexburg, ID 83440 (the 'Subject Property') retroactive to July 16, 2021, including the right to conclude the eviction process following a previously-completed judicial foreclosure." First Bankruptcy Case at Doc. No. 41. The Court granted Trust's motion and gave it the relief from stay it sought. *Id.* at Doc. Nos. 103–04. As such, the Court did not limit the stay relief to any specific course of action or pending state court case. The Court did, however, deny Trust's request for annulment of the stay.

MEMORANDUM OF DECISION–2

appealed the Court's order, which appeal remains pending. *Thomason v. LSF10 Master Participation Trust,* 22-00022-DCN (D. Idaho).

On October 7, 2021, Debtor objected to the proof of claim filed by WaFd Bank ("WaFd"), which objection was overruled and WaFd's claim was allowed in the amount of $139,565.81. First Bankruptcy Case at Doc. Nos. 67 & 162–63. Debtor also appealed this decision, which appeal was dismissed. First Bankruptcy Case at Doc. No. 191; *Thomason v. Washington Federal Savings aka WaFd*, 22-00140-DCN at Doc. No. 12. On November 28, 2022, Debtor moved for reconsideration of the dismissal of the appeal, which remains pending. 22-00140 at Doc. No. 14.

On January 10, 2022, Debtor commenced an adversary proceeding to remove the state court litigation involving Trust to the bankruptcy court for adjudication. *Thomason v. LSF10 Master Participation Trust,* 22-08003-JMM. This Court issued a Report and Recommendation by which it recommended that the District Court remand the state court proceedings back to the state court, which recommendation the District Court adopted and the state court cases were remanded. 22-08003-JMM at Doc. No. 9; *Thomason v. LSF10 Master Participation Trust*, 22-00175-DCN at Doc. No. 6.

While all this was going on, Debtor was still in a chapter 13 case and needed to have a plan confirmed. She filed proposed plans on July 30, 2021, September 27, 2021, January 13, 2022, and March 17, 2022. First Bankruptcy Case at Doc. Nos. 22, 53, 150, & 185. Each plan was denied confirmation on specific grounds, which Debtor chose not to correct in subsequent plans. Ultimately, Trustee filed a motion to dismiss the case which the Court granted on June 13, 2022. *Id.* at Doc. Nos. 194 & 223–24. Debtor

MEMORANDUM OF DECISION–3

moved for reconsideration of the Court's order dismissing the case, which the Court denied on August 5, 2022. *Id.* at Doc. Nos. 229 & 240. That order was not appealed.

On November 8, 2022, in response to Trust's renewed eviction efforts, Debtor initiated a new chapter 13 bankruptcy case. *In re Thomason,* 22-40460-JMM ("Second Bankruptcy Case"). In connection with that filing, she moved for an extension of time to obtain the required credit counseling. Second Bankruptcy Case at Doc. No. 6. Trustee moved for dismissal of the case, in which motion Trust joined. *Id.* at Doc. Nos. 16 & 25.

On November 8, 2022, the same day she filed the Second Bankruptcy Case, Debtor also moved to extend the automatic stay pursuant to §§ 362(c)(3)(B) and alternately under (c)(4)(B). She filed this motion, however, in the First Bankruptcy Case at Doc. No. 252. Finally, she commenced a new adversary proceeding seeking to remove the previously remanded state court cases back to the bankruptcy court and attached it to the now-dismissed First Bankruptcy Case. *Thomason v. LSF10 Master Participation Trust*, 22-08019-JMM. Trust has moved for dismissal of the adversary proceeding, which motion is set for hearing on December 19, 2022. *Id.* at Doc. Nos. 3 & 7. The Court will address each of the other pending motions in turn.

*Analysis*

1. Motion to Extend Time to Complete Credit Counseling

Section 109(h)(1) provides that an individual may not be a debtor in bankruptcy unless he or she receives a credit counseling briefing within the 180-day period ending on the date the petition was filed. This requirement is implemented by Rule 1007(b)(3),

MEMORANDUM OF DECISION–4

which requires an individual debtor to file a statement of compliance with the credit counseling requirement, which must include one of the following:

>  (A) an attached certificate and debt repayment plan, if any, required by § 521(b);
>
>  (B) a statement that the debtor has received the credit counseling briefing required by § 109(h)(1) but does not have the certificate required by § 521(b);
>
>  (C) a certification under § 109(h)(3); or
>
>  (D) a request for a determination by the court under § 109(h)(4).

Idaho bankruptcy courts have interpreted the credit counseling requirement strictly, holding that there is no room for bankruptcy courts to discretionarily forgive the requirements of § 109(h), and, therefore, if the requirements are not met the case must be dismissed. *In re Ruckdaschel*, 364 B.R. 724, 733 (Bankr. D. Idaho 2007) (citing *In re Rodriguez*, 05.4 I.B.C.R. 102, 104 (Bankr. D. Idaho 2005)).

Debtor addressed the deficiency in her motion to extend the time to complete the credit counseling requirement. Second Bankruptcy Case at Doc. No. 6. In this document, filed the same day as the petition, Debtor explained the need for an emergency filing due to her understanding that a 72-hour eviction notice would be served on her just prior to the 3-day Veterans Day weekend, limiting her access to the courts. She further expressed her belief that she was "fully covered" by the credit counseling she received, along with the certificate she filed, in the First Bankruptcy Case, as that case was not yet closed. *Id.* Finally, she asked for a temporary waiver of the requirement for no more than four business days. *Id.* No certificate of credit counseling has ever been filed, although Debtor stated at the hearing on the pending motions that she had completed the

MEMORANDUM OF DECISION–5

credit counseling requirement.[3] The Court concludes Debtor's non-compliance with the credit counseling requirement of § 109(h) provides a basis for dismissal of the Second Bankruptcy Case in addition to that discussed below.

2. Motion to Dismiss

Trustee moves for dismissal of the Second Bankruptcy Case with a one-year bar to refiling citing the following grounds: 1) Debtor did not comply with the credit counseling requirement; 2) neither Debtor's petition nor plan were filed in good faith; and 3) Debtor filed the same proposed plan that was deemed unconfirmable by the Court in the First Bankruptcy Case. Trust's joinder contends that Debtor is not utilizing the bankruptcy process for the fundamental reasons for which it was established—to assist the honest but unfortunate debtor to obtain a fresh start—but rather is solvent and seeking to avoid eviction.

As discussed above, the failure to obtain credit counseling prior to filing provides one basis for dismissing the case. Turning to the other reasons cited by Trustee and Trust, the Court finds the petition and proposed plan filed in the Second Bankruptcy Case were filed in bad faith, rendering dismissal appropriate.

Section 1307(c) provides that the bankruptcy court may convert or dismiss a chapter 13 case, depending on the best interests of the creditors and the estate, for any of eleven enumerated circumstances. While not specifically listed, the courts have held that

---

[3] The Court is otherwise peripherally aware that Debtor completed the required counseling on November 21, 2022. Debtor faxed the certificate to the Court despite knowing that fax filings are not accepted absent prior Court approval. The original of the certificate has never been filed with the Court. Moreover, while she requested a temporary waiver of four business days, she actually received the credit counseling 8 business days after filing the motion.

MEMORANDUM OF DECISION–6

bad faith is a "cause" for dismissal under § 1307(c). *Eisen v. Curry (In re Eisen),* 14 F.3d 469, 470 (9th Cir. 1994) ("A Chapter 13 petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c)."); *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999) ("We hold that bad faith is 'cause' for a dismissal of a Chapter 13 case with prejudice under § 349(a) and § 1307(c).").

To determine whether bad faith exists such that dismissal is appropriate, the totality of the circumstances must be examined. *Leavitt*, 171 F.3d at 1224. This includes consideration of the following factors:

> (1) whether the debtor misrepresented facts in her petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed her Chapter 13 petition or plan in an inequitable manner;
> (2) the debtor's history of filings and dismissals;
> (3) whether the debtor only intended to defeat state court litigation; and
> (4) whether egregious behavior is present.

*Drummond v. Welsh (In re Welsh),* 711 F.3d 1120, 1129 (9th Cir. 2013) (citing *In re Leavitt,* 171 F.3d at 1224) (internal citations omitted). A showing of malice or actual fraud is not required. *Leavitt*, 171 F.3d at 1224.

The Court finds Debtor has unfairly manipulated the Bankruptcy Code and filed her plans in an inequitable manner. While there is no evidence of dishonesty in her filings, it is clear she is utilizing the advantages of the bankruptcy system, most notably the automatic stay, while at the same time not actually paying her creditors or reorganizing her debt. Consider, her schedules indicate she has real and personal property worth, by her own estimation, $7,861,101 but liabilities of only $176, calling into question her need for a bankruptcy filing. First Bankruptcy Case at Doc. No. 16;

MEMORANDUM OF DECISION–7

Second Bankruptcy Case at Doc. No. 1. Moreover, Debtor does not list WaFd's claim in her schedules or include payments to it in her proposed plan, despite the fact that this Court allowed that claim in the amount of $139,565.81 in the First Bankruptcy Case at Doc. No. 163. Indeed, in the First Bankruptcy Case, this Court specifically found Debtor "proposes her chapter 13 plan in an inequitable manner—the plan provides for payment of one creditor to whom no debt is actually owed, while completely ignoring another whose claim has been allowed by the Court."[4] First Bankruptcy Case at Doc. No. 223. As Debtor has filed the same plan here as she did in the First Bankruptcy Case, this finding equally applies to the Second Bankruptcy Case.

Furthermore, because Debtor filed the same plan, the faults identified by the Court previously are likewise flaws preventing confirmation in the Second Bankruptcy Case. Notably, 1) the plan does not comply with § 330(c) and provide for payments sufficient to compensate Trustee in an amount of at least $5 per month; 2) it does not comply with § 1325(a)(5) because (i) the plan does not propose to pay WaFd's claim, (ii) it does not provide for WaFd's retention of its lien securing the claim or for surrender of the property securing the claim, and (iii) WaFd did not accept the plan; and 3) the first requirement of § 1325 is that a chapter 13 plan must comply with all of the provisions of § 1325 and of Title 11, of which Debtor's plan falls well short.

---

[4] Debtor scheduled Fall River Electric as a creditor in both bankruptcy cases, but that entity never filed a proof of claim in the First Bankruptcy Case. As such, that creditor did not have an allowed claim and apparently it either does not intend to pursue any amounts it is owed or believes the Debtor is not indebted to it. While the bar date has not expired in the Second Bankruptcy Case, Fall River Electric has neither appeared in the case nor filed a proof of claim.

MEMORANDUM OF DECISION–8

Moreover, the Court's prior finding of bad faith applies equally to the filing of this petition and plan. This Court previously stated,

> [Debtor's] unwillingness to pay an allowed secured debt through her plan while at the same time listing as her only creditor the power company, to whom she is current with her payments, further supports a finding of inequity in filing her petition and plans. Restated, she has a debt to reorganize but apparently does not intend to do so through the bankruptcy process, yet she proposes to pay a different creditor, for which debt she is current, over the course of three years. This supports a finding of inequity with regard to her petition and/or plan, but also an unfair manipulation of the Bankruptcy Code and its intended purposes. These factors indicate a lack of good faith.

First Bankruptcy Case at Doc. No. 223, p. 19. Accordingly, Debtor's unfair manipulation of the Bankruptcy Code and filing of the petition and plan in an inequitable manner support dismissal.

The Court will next consider Debtor's history of filings and dismissals. While the list is not long, it is telling. She filed the First Bankruptcy Case in order to stop an eviction and, as discussed above, her petition and plan were filed in an inequitable manner constituting bad faith and resulting in dismissal. Her creditor, Trust, then proceeded to attempt eviction once again, and Debtor filed the Second Bankruptcy Case, with the same issues, inequities, and lack of good faith as before. As such, this element also supports dismissal.

Next, the Court will consider whether Debtor filed the bankruptcy petition only with the intention to defeat state court litigation. Given the circumstances presented with both filings, it seems apparent this is the case. She seeks the protection of the automatic

MEMORANDUM OF DECISION–9

stay to thwart Trust's state court eviction efforts, but does not apparently intend to reorganize her debts and pay her creditors.

Finally, the Court finds Debtor's behavior is egregious. As with the debtor in *Leavitt*, Debtor here offers no justification or excuse for her actions. Rather, her clear intention is to use the bankruptcy system to avoid eviction following a state court foreclosure and sheriff's sale. The Ninth Circuit Court of Appeals has found this constitutes egregious behavior. *See Leavitt,* 171 F.3d at 1225–26. The same is true in the Second Bankruptcy Case.

In sum, the record before the Court provides an ample basis for dismissal of the Second Bankruptcy Case. Therefore, Trustee's and Trust's motions to dismiss will be granted.

In addition to dismissal, Trustee has asked the Court to impose a one-year bar to refiling. The Court has authority to order such a bar under § 349(a):

> Section 349(a) is not ambiguous, and plainly provides that the bankruptcy court may, at its discretion and for cause, bar the discharge of existing debt. Inherent in this authority is the power to bar subsequent bankruptcy petitions that seek to discharge such debt.
>
> Furthermore, cases which have looked to the legislative history of § 349 note that it was intended to provide courts with authority to control abusive filings "beyond the limits of § 109(g)," even in cases where the bankruptcy court enjoined the filing by a debtor of any case under Title 11 for a period greater than 180 days.

*In re Hieter*, 414 B.R. 665, 673 (Bankr. D. Idaho 2009) (quoting *Leavitt v. Soto (In re Leavitt),* 209 B.R. 935, 939 (9th Cir. BAP 1997), *aff'd,* 171 F.3d 1219 (9th Cir. 1999)

MEMORANDUM OF DECISION–10

(internal citations omitted)); *see also Cox v. Noordam (In re Noordam),* 03.2 I.B.C.R. 136, 139–40 (Bankr. D. Idaho 2003).

Given the discussion above, a bar to refiling is likely appropriate, but may be unnecessary. For repeat filers who have had a bankruptcy case pending within the year preceding the filing of the most recent case, the automatic stay terminates on the thirtieth day after the petition was filed in the most recent case. *See* § 362(c)(3)(A). Moreover, § 362(c)(4) provides that where a debtor commences a third bankruptcy filing (i.e., the debtor had two pending cases within the previous year that were dismissed), the automatic stay "shall not go into effect upon the filing of the later case." § 362(c)(4)(A)(i). Thus, in contrast to the second filing, where the automatic stay goes into effect but then terminates on the 30th day after the petition date, for a third filing, the stay does not go into effect at all. *In re Reswick*, 446 B.R. 362, 372 (9th Cir. BAP 2011). As it appears Debtor's aim in her filings is to take advantage of the automatic stay, the provisions of the Bankruptcy Code may well provide an effective deterrent to subsequent filings in the near future. Accordingly, Trustee's request for a bar will be denied.

3. Motion to Extend the Automatic Stay

Debtor filed a motion to extend the automatic stay. While she filed it in the First Bankruptcy Case, because Debtor is pro se, the Court will read her pleadings liberally and will consider the motion as though filed in both bankruptcy cases.

Debtor's motion seeks an extension pursuant to §§ 362(c) and (c)(3)(B), or alternatively, for imposition of the stay under § 362(c)(4)(B). First Bankruptcy Case at Doc. No. 252. Pursuant to § 362(c)(1), the stay of an act against property of the estate

MEMORANDUM OF DECISION–11

under § 362(a) continues until such property is no longer property of the estate. The bankruptcy estate, in turn, ceases to exist upon dismissal of the bankruptcy case. *See* § 349(b)(3) (unless the court for cause orders otherwise, dismissal of a case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."). The case law is in accord. *See In re Harris*, 258 B.R. 8, 10–11 (Bankr. D. Idaho 2000) (upon dismissal the automatic stay terminates, and property of the estate revests in the debtor); *In re De Jesus Saez,* 721 F.2d 848, 851 (1st Cir. 1983) ("It seems self-evident that there is no 'estate' and hence no 'property of the estate' unless there is an existing petition. Dismissal of the petition, therefore, would ordinarily terminate the stay as well."); *In re Ethington,* 150 B.R. 48, 51 (Bankr. D. Idaho 1993) ("The stay generally terminates upon the dismissal of the underlying bankruptcy."); *In re Doherty,* 229 B.R. 461, 463 (Bankr. E. D. Wash. 1999) (holding the bankruptcy estate and automatic stay terminate upon dismissal); *In re Weston,* 101 B.R. 202, 204–05 (Bankr. E. D. Cal. 1989) (holding the automatic stay ends at the moment the dismissal order is docketed). In addition, § 362(c)(2) provides that the stay continues until closure or dismissal of the case, whichever is earlier. As such, because the First Bankruptcy Case has been dismissed, the bankruptcy estate in that case has terminated and the stay no longer exists.

Moreover, the Idaho bankruptcy courts have "clearly and unambiguously held that, once the automatic stay of § 362(a) has terminated, it may not be 'reinstated' on the debtor's motion." *In re Wallace*, No. 11-21077-TLM, 2012 WL 202586, at *2 (Bankr. D. Idaho Jan. 24, 2012) (citing *In re AICO Recreational Props., LLC,* 2003 WL 1964190,

MEMORANDUM OF DECISION–12

at *6 (Bankr. D. Idaho Apr. 11, 2003); *In re Foldesi Family Land Trust # 3,* 2003 WL 25273865, at *4 (Bankr. D. Idaho Feb. 28, 2003).[5]  Accordingly, the Court denies Debtor's request to reimpose or reinstate the stay in the First Bankruptcy Case.

Turning to the Second Bankruptcy Case, § 362(c)(3) addresses serial filings such as the one at hand.  As noted above, if a second case is filed less than a year after the first case is dismissed, the automatic stay terminates after 30 days absent a motion to extend it which must be noticed and heard within that time frame.  As Debtor filed this case on November 8, 2022, by the Court's calculation, absent an extension, the stay will terminate by operation of law on December 8, 2022.

The stay may be continued on motion of a party in interest "only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed." § 362(c)(3)(B).  Generally, the moving party must establish the good faith element by a preponderance of the evidence.  *In re Hart*, No. 12-21220-TLM, 2012 WL 6644703, at *3 (Bankr. D. Idaho Nov. 23, 2012).  Under certain circumstances, however, a case is presumed not to be filed in good faith, and the moving party must rebut that presumption with "clear and convincing" evidence that the case was filed in good faith.  *Id.* (citing § 362(c)(3)(C)).  As pertinent here, the filing is presumed not in good faith as to all creditors if Debtor failed to "file or amend the petition or other documents

---

[5] Each of those cases note that this proposition has been established in the District of Idaho since *Jones v. Wood (In re Wood),* 33 B.R. 320, 322–23 (Bankr. D. Idaho 1983), that *Wood* remains good law as established by, *inter alia, Canter v. Canter (In re Canter),* 299 F.3d 1150, 1155 n.1 (9th Cir. 2002), and that *Wood* was cited with approval in *Official Creditors Committee v. Metzger (In re Dominelli),* 788 F.2d 584, 586 (9th Cir. 1986).  *See Wallace,* 2012 WL 202586, at *2 n.4.

MEMORANDUM OF DECISION–13

as required by this title or the court without substantial excuse" or where "there has not been a substantial change in the financial or personal affairs of the debtor since dismissal of the last case" and there is no other reason to conclude the case will result in a confirmed plan. *See* § 362(c)(3)(C)(i)(III) and (III)(bb). Here, Trust pointed to sufficient facts to meet this burden, specifically that Debtor has filed a petition and proposed plan that do not differ from those lodged in the First Bankruptcy Case—a case in which the Court found the proposed plan unconfirmable and that it dismissed for lack of good faith. Moreover, Debtor has not alleged that circumstances have changed since that time, with the exception of Trust receiving a default judgment in the state court eviction case. While that is, of course, a significant event in the state court case and for Debtor personally, that default judgment and resulting writ of eviction do not impact the bankruptcy proceedings, and do not constitute clear and convincing evidence of changed circumstances.

As such, for purposes of resolving Debtor's motion, the Second Bankruptcy Case is "presumptively filed not in good faith." § 362(c)(3)(C). The presumption that the serial case is "filed not in good faith" applies to all creditors. Moreover, under §362(c)(3)(C)(ii), if a creditor obtained stay relief in the prior case, as Trust did, the presumption that the serial case was not filed in good faith arises. As such, the Court orally denied Debtor's motion to extend the stay as to Trust and entered an order to that effect. Doc. No. 36.

As to other creditors in the Second Bankruptcy Case, not only does Debtor begin under the burden of a presumption that the case was not filed in good faith, but the Court

MEMORANDUM OF DECISION–14

has expressly held this to be true.[6]  Because Debtor has not demonstrated by clear and convincing evidence that the Second Bankruptcy Case was filed in good faith, extension of the automatic stay is not appropriate.  Accordingly, Debtor's motion to extend the automatic stay, as applied to the Second Bankruptcy Case, is denied.

## *Conclusion*

Debtor's motion for extension of the deadline to complete credit counseling is denied.  In addition, the Court concludes there is an adequate basis on which to grant Trustee's motion to dismiss, joined in by Trust.  The Court declines, however, to impose a bar to refiling on the Debtor.  The Court further concludes there is no basis upon which to reimpose or extend the automatic stay in either of Debtor's bankruptcy cases and therefore her motion to extend the stay is denied.



DATED:  December 6, 2022

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

---

[6] Absent the Court's prior finding that neither the petition nor plan in the First Bankruptcy Case were filed in good faith, the Court would have examined the factors set forth in *In re Elliot–Cook,* 357 B.R. 811, 814 (Bankr. N.D. Cal. 2006).  In so doing, the Court would have reached the same conclusion.  Those factors include: 1) the timing of the second petition; 2) how the debt(s) arose; 3) the Debtor's motive in filing the second petition; 4) how the Debtor's actions affected creditors; 5) why the Debtor's prior case was dismissed; 6) the likelihood that the Debtor will have a steady income throughout the bankruptcy case, and will be able to fund a plan; and 7) whether the trustee or creditors object to the motion to continue the stay.  *In re Hart*, 2012 WL 6644703, at *3 (citing *Elliot-Cook,* 357 B.R. at 814–15.)

MEMORANDUM OF DECISION–15